M.T. SHANNON, H27892

Name and Prisoner/Booking Number

CMF

Place of Confinement

PO BOX 2500

Mailing Address

VACAVILLE CA 95696-2500

City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

**FILED**

**Aug 31, 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

M.T. SHANNON
(Full Name of Plaintiff)                      Plaintiff,

v.

(1) HOWARD MOSELEY, CHIEF OF
(Full Name of Defendant)
APPEAAS,

(2)

(3)

(4)
Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 2:22-cv-1530-JDP (PC)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:

    ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983

    ☐ 28 U.S.C. § 1331; <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).

    ☐ Other: _____.

2.  Institution/city where violation occurred: CMF-VACAVILLE _____.

## B. DEFENDANTS

HOWARD MOSELEY

1. Name of first Defendant: _____. The first Defendant is employed as:

_____CHIEF OF APPEALS_____ at ___INMATE APPEALS BRANCH_____.
        (Position and Title)                                    (Institution)

2. Name of second Defendant: _____. The second Defendant is employed as:

_____ at _____.
        (Position and Title)                                    (Institution)

3. Name of third Defendant: _____. The third Defendant is employed as:

_____ at _____.
        (Position and Title)                                    (Institution)

4. Name of fourth Defendant: _____. The fourth Defendant is employed as:

_____ at _____.
        (Position and Title)                                    (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?   XX  ☒ Yes      ☐ No

2. If yes, how many lawsuits have you filed? 3_____. Describe the previous lawsuits:

    a. First prior lawsuit:
        1. Parties: __SHANNON_____ v. _____ALAMEIDA_____
        2. Court and case number: __UNKNOWN_____.
        3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
        DISMISSED AND APPEALED TO THE 9th CIRCUIT COURT._____.

    b. Second prior lawsuit:
        1. Parties: SHANNON_____ v. _____DIAZ_____
        2. Court and case number: __UNKNOWN_____.
        3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) PENDING
        _____.

    c. Third prior lawsuit:
        1. Parties: __SHANNON_____ v. _____INNISS-BURTON_____
        2. Court and case number: __UNKNOWN_____.
        3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) PENDING____
        _____.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

2

## D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: <u>8th AND 14th AMENDMENT TO THE U.S. CONSTITUTION.</u>

2. **Claim I**. Identify the issue involved. Check **only one**. State additional issues in separate claims.

   ☐ Basic necessities     ☐ Mail     ☐ Access to the court     ☐ Medical care
   ☐ Disciplinary proceedings     ☐ Property     ☐ Exercise of religion     ☐ Retaliation
   ☐ Excessive force by an officer     ☐ Threat to safety     ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   <u>PLEASE SEE PAGES 7 THROUGH 21.</u>

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   <u>EMOTIONAL DISTRESS, STOMACH ACHES, HEASDACHES, NAUSEA</u>

5. **Administrative Remedies:**

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?     ☐ Yes    ☐ No

   b. Did you submit a request for administrative relief on Claim I?     ☒ Yes    ☐ No

   c. Did you appeal your request for relief on Claim I to the highest level?     ☒ Yes    ☐ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

## CLAIM II

1. State the constitutional or other federal civil right that was violated: 8th AND 14th AMENDMENT TO U.S. CONSTITUTION.

_____.

2. **Claim II.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - XX ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments. PLEASE SEE PAGES 7 THROUGH 21.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   EMOTIONAL DISTRESS, STOMACH ACHES, HEAD ACHES, NAUSEA.
_____
_____.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes   ☐ No
   b. Did you submit a request for administrative relief on Claim II?   ☒ Yes   ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level?   ☒ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
_____.

**CLAIM III**

8th AND 14th AMENDMENTS

1. State the constitutional or other federal civil right that was violated: TO U.S. CONSTITUTION,

2. **Claim III.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: ADA/RA VIOLATION

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.
   PLEASE SEE PAGES 7 THROUGH 21.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   EMOTIONAL DISTRESS, STOMACH ACHES, HEAD ACHES, NAUSEA.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☐ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim III? XX Yes ☐ No
   c. Did you appeal your request for relief on Claim III to the highest level? XX Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. XX _____

**If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.**

## E. REQUEST FOR RELIEF

State the relief you are seeking:

FOR JUDGMENT IN PLAINTIFF'S FAVOR; COMPENSATORYYDAMAGES IN THE
AMOUNT OF ONE MILLION DOLLARS;;FOR COST OF THE SUITTWAIVED; ONE
MILLION DOLLARS IN PUNITIVE DAMAGES; ONJUNGTIVE RELIEF COMPELLING
THE STATE TO TAKE ACTION; SUCH OTHER AND FURTHER RELIEFFAS THE
COURT DEEMS JUST AND PROPERT.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____ 8 / 30 / 22 _____          _____
                    DATE                                  SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

    WILLIAM FRIERY, E02093

_____
(Signature of attorney, if any)

_____
_____
_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

# INTRODUCTION

I. This lawsuit arises out of the deliberate indifference exhibited by correctional staff at CMF. To provide Plaintiff with

Page 7

necessities to effectively communicate, although he is identified as an ADA/RA inmate.

II.  <u>Jurisdiction and venue:</u>

The claims arised

Page 8

out of Solano Couinty.

California, in and for

the City pf Vacaville

judicial district , in

which jurisdiction is

conferred pursuant to

Title 42 USC 1331 and

Page 9

1343.  Therefore, venue Is proper to accure this action in the Eastern District. where the crimes  occurred.

# III.  <u>Parties:</u>

1)  Plaintiff: Is a 58-year-old  African American male inmate prisoner proceeding in pro per and In Forma Pauperis status. Plaintiff is identified as

Page 11

an ADA/RA inmate because he is legally blind (See Exhibit A "declaration." ), amongst other issues.

Defendant: Is the Chief of Inmate Appeals Branch. CDCR

Page 12

Headquarters.

IV.  <u>Statement of Facts</u>

2.  On April 15, 2022.
The Office of Appeals
received Plaintiff's
Inmate grievance
complaining about
needing a magnifying

Page 13

Device and a typewriter as a Durable Medical Equipment (DME) to assist him in communicating, since he is legally blind and cannot otherwise get his basic necessities

Page 14

met without said items.

3.  Since December 18.
2007, Plaintiff has been
identified as an ADA/RA
Inmate because of his
blindness and low
vision, which resulted
from two failed corneal

Page 15

transplants.

4.  On 06/15/22, the appeal, log No. 223095.

Was fully exhausted and disapproved by Defendant Moseley, who stated "You are

Page 16

accessing all departmental programs, services. And activities for wjocj you are eligible." which Plaintiff assert as being untrue since he cannot see pr read to

Page 17

participate in certain programs that require sight or vision. Nevertheless, Defendant Moseley went on to state that "The request was appropriayely

Page 18

addressed in log No. CMF-M-22-00013, amd that he determined that the response was substantive.  However.

Plaintiff believes

Page 19

Moseley ererred in his decision-making. to Plaintiff's detriment, rendering a decision based on discrimination

And deliberate indifference to his

Psge 20

serious medical needs, in violation of the 8th Amendment to the U,S. Constitution.

EXHIBIT A

DECLARATION

# DECLARATION OF MICHAEL SHANNON

I, Michael Shannon, declare:

1.     I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would competently so testify.

2.     My California Department of Corrections and Rehabilitation ("CDCR") number is H27892. I am currently housed at the California Medical Facility ("CMF") on Facility B, Building 3 ("B3"). I am 56 years old.

3.     I have been incarcerated in CDCR since March 9, 2001.

4.     I am an *Armstrong* class member. I am designated as DPO and DPV. I am blind in my right eye and have very low vision in my left eye. My field of vision is limited to 20 degrees, so I can't see things on the right or left side of me. My vision is very blurry and cloudy, and it's been getting blurrier every year. I also have sensitivity to light, both sunlight and bright indoor lights, which gives me headaches and eye strain. I lost most of my vision after a failed corneal transplant procedure in December 2018; before then, I was not blind. I previously used eyeglasses to read but that's it. Now, even squinting doesn't help me read the words on a page without a high-powered magnifier.

5.     The full-page magnifiers and card-sized magnifiers that they have here are useless. With the card magnifiers, even if you tried using it to magnify something small, like a ducat, it wouldn't help. No one finds them useful. Even when I lost my magnifying glass in October 2021 and they gave me a card magnifier as a substitute, I didn't use it because I can't see anything with it. The full-page magnifier that you can use in the law library doesn't work either. It's all scratched up and cloudy, and even if they bought a new one, it doesn't magnify the words large enough for someone with very limited vision like me.

6.     My non-electronic magnifying glass used to work OK for me, but since my vision has been getting cloudier, it takes me a lot longer to read things with it. It just doesn't make the words big enough, and if you try moving the magnifying glass around to make the words bigger and move it too far away from the page, then the words just get

1  cloudy. Also, depending on how you hold it, sometimes it flips the words upside down, so

2  you have to move it around to make the words look right.

3       7.     The electronic magnifiers are totally different, they're way better. With the

4  Amigo that they have in the law library, for me the main thing that's better is that you can

5  zoom in and out to the perfect word size, whereas with the non-electronic magnifying glass

6  you can't do that—and once your vision gets worse like mine did, whatever magnifying

7  glass you were using becomes useless. Whereas the electronic magnifier makes the words

8  sharp so you can actually read them.

9       8.     The other thing that makes the electronic magnifier way better than the

10  magnifying glass is that you can change the brightness. When I'm sitting in the dorm, I try

11  to read with the magnifying glass but the brightness from the overhead lights makes the

12  white background on the pages too bright, and I can't read for very long, maybe 20

13  minutes at a time before I have to stop and pause for 10 minutes. This doesn't happen with

14  the Amigo because you can change the brightness—it makes the pages darker.

15       9.     Because of the zoom and the brightness-changing feature on the Amigo, I

16  can read a four-page letter with the Amigo in about 15 minutes. With the magnifying glass

17  it will take me about 45 minutes to read the same letter, and even then, I'm not sure if I'm

18  getting all the words right because I have to keep maneuvering the magnifying glass

19  around to try and make the words clear.

20       10.    The Merlin desktop magnifier in the law library is also excellent. Because of

21  its large screen, it can blow up a much greater amount of text than just a paragraph or

22  sentence like you do with a smaller magnifier. So with the desktop magnifier, I can

23  actually read legal cases pretty quickly without getting confused. You can also change the

24  brightness on it like with the Amigo; I set the brightness at about seventy percent most

25  times. When I use the Merlin I can actually do legal research for my cases—most recently

26  I was using it to read some cases that I printed out about how to admit evidence in a civil

27  case on a writ of mandate.

28

[3856808.1]

2

11. The problem is that they keep these devices in the law library and I only get to go there at most twice a week for two hours at a time, Sundays and Wednesdays. But even that doesn't always happen—like in January 2022 my unit was on quarantine so we didn't get to go to the library, which meant that for weeks I couldn't read this letter that I had from my sister that was just sitting next to my bed. The magnifying glass I had in my cell didn't make it big enough. I just had to wait until I could go to the library before I could read the mail. (On October 28, 2021, I filled out an ADA request form asking to be able to use an Amigo in the housing unit but the RAP responded that CMF doesn't check out Amigo magnifiers to let us use in the housing units. I have attached their response as an exhibit to my declaration.)

12. Even when I do get to the library, I end up having to prioritize my legal research over reading anything else, so I don't get to read other stuff that I need or want to read. For example, a few months ago, I got a letter from my fiancée, and her handwriting is really small so I need the electronic magnifiers to read her letters clearly. But I didn't have time to read her letter using the Merlin or Amigo in the law library because I had to use all my library time on legal research for my civil case. So I tried using my magnifying glass back in the dorm to read it, and I made it through the letter eventually, but it took me two days to read it and the letter was just a page and a half long. And even then I wasn't totally sure what it said, so at my next library ducat, I had to use some of my time to review the letter and make sure of what it actually said.

13. I know they also have electronic magnifiers in education, but I'm not allowed to use those because I'm not enrolled in education. I even wrote to the principal and vice principal and asked about this and they said I don't have access to those devices.

14. I have gotten anxiety from not being able to read these letters from family. My mother's got diabetes and high blood pressure and my sister has sciatica, so when I can tell that the letter is from my family, I worry about their health when I can't read the letter until a day or a few days later in the library to find out what it says.

15.     There is also a lot of written material from CDCR that I can't read without the law library magnifiers. For example, the Title 15 regulations that they give you every six months, regular 602 responses and healthcare 602 responses, literature from the law library, Christian literature from the chaplain as well as the weekly Prophetic Word newsletter, the San Quentin newsletter, my medical records, and the Bible—the print for all this stuff is too small for me. The only thing that they print in large print for me are the Reasonable Accommodation Panel responses, which they put in 18 point font, which is sufficient. Everything else is in normal or small print.

16.     I've had too many bad experiences with other inmates and ADA workers to rely on them for reading and writing. In 2009, there was an inmate I knew who would help me about twice a week with reading and writing; we would sit at a table together in the dayroom and I would formulate what I wanted to say out loud and then he would write it down. I had to give him about ten dollars a week in commissary in exchange, and I only get about $130-140 every three months from my mother in commissary funds. But when he read my letters to me, turns out he got a hold of my mother's address, too. He wrote to her, saying that he wanted to get with her and that he wanted her to be his girl. It shook my mother up pretty bad. She read the letter to me over the phone and it was so upsetting that I told her to stop. I couldn't take it. I didn't know when he was going to parole and I worried that he might pay my mother a visit.

17.     More recently, in 2020, there was an ADA worker who pushed me around in my wheelchair to appointments, and on the way back from commissary he took a bag out of the back of my wheelchair that had $40 worth of canteen in it. I yelled, "Hey man where you going, whatchu doing, you got my stuff!" but he ran away. I didn't report it because I didn't want him or his homeboys beating me up.

18.     These experiences just made me leery of depending on other people for my personal stuff. I don't want anyone getting access to my letters and contacting my family like before. But there are still sometimes where I have no choice and have to depend on the guys in my dorm, like when I'm filling out the pre-printed canteen slips—I can't read these

1 on my own, the print is too small. In the dorm, I know the guys who are doing it for me,
2 but I knew that guy in 2009 pretty well, too, and he still took advantage of me. You just
3 never know who you can trust in prison, and I'd rather just be able to read and write on my
4 own.

5      19.     When I ask staff for assistance, they just tell me to find an ADA worker for
6 help. During the week of January 10, 2022, for example, I asked a nurse for help filling out
7 a canteen slip and she said, "I'll get an ADA worker to do it for you," but I declined
8 because I didn't want an ADA worker seeing what I was buying from canteen after what
9 happened in 2020, described above. Another time, during the week of January 3, I asked
10 custody staff to help me dial a phone number and the officer said, "Well just get an ADA
11 worker to do it for you." And I declined because I don't want other inmates having my
12 family's phone numbers, and the CO just said, "Oh well."

13      20.     Besides wanting privacy, I don't want to feel like I'm imposing on anyone,
14 so I just back off. It just feels like I'm a burden on someone else who doesn't want to do
15 anything for me. My eyesight is so bad and, as a result, my handwriting is terrible, so I
16 know I need help, but when I ask for it and I can't get it, it makes me feel helpless and
17 hopeless. So it would be great to have the electronic auxiliary in the housing units and
18 specifically in our cells. That way I could get my reading done every week. I could feel
19 more independent. Those devices are reliable—I wouldn't have to depend on no one else
20 to do my reading. And it would just be really handy to use for legal documents and
21 personal letters. It would also help with handwriting because with an electronic magnifier I
22 could see the text well enough to watch my hand move the pen on the paper.

23      21.     Having access to these devices in the dayroom but not in the cells would be
24 insufficient. They should not be allowed to limit the times of day that we are able to read,
25 but if they limited access to the electronic magnifiers to dayroom use, that's exactly what
26 would happen—we wouldn't be able to read in the evening or night, just like now. I would
27 really like to be able to read in the evenings. It would be nice to be able to read poetry and
28

1 the Bible before I go to bed. These are things I can't do now, because I don't have an

2 electronic magnifier in my cell.

3       22.      Even if we get the electronic magnifiers, though, having things in large print

4 would be really helpful because I can't stare at the small magnifier screen for too long.

5 After about 30 minutes, my eyes start to feel sore, like someone's sticking pins in my eyes.

6 So the magnifiers are great for things that I read quickly, like looking up Title 15

7 regulations, reading the Eastern District local rules, and short pieces of legal mail. But for

8 stuff that takes me longer to read—like legal cases, the Bible, long articles in the

9 magazines—that's where the large print is important. I can read large print documents for

10 extended amounts of time without getting that pain that I feel when I use a small electronic

11 magnifier for too long. It would also help with reading longer documents if they had

12 electronic magnifiers with bigger screens that are actually designed for reading longer

13 documents—the Amigo is something you're only supposed to use for spot reading.

14       23.      The other reason that we need the actual documents is that these machines

15 break down sometimes. Like right now, the Merlin in the library has been down for about

16 six weeks. I can't read long documents like legal cases as well with the smaller Amigo

17 magnifier, so while the Merlin is down, I don't have enough access to the tools I need for

18 reading.

19       24.      Overall, reading is just very important to me, especially reading the Bible.

20 When I read it, I feel like I have more insight into myself, into my spiritual side. Having

21 the ability to read the Bible makes me feel satisfied spiritually. If they had a larger print

22 Bible or if I had an electronic magnifier in my cell, I could read it whenever I wanted. But

23 for now, the only times I can read the Bible are when I get to the law library and can use

24 the Merlin, or when I can find someone to read it to me.

25       25.      This declaration was taken and written for me by my attorney at Prison Law

26 Office, Jacob J. Hutt. Due to my vision disability, and my lack of consistent access to a

27 high-powered magnifier, Mr. Hutt provided me with a large-print version of this

28 declaration, which I reviewed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at Vacaville, California, on this ___31st___ day of ___AUGUAT___, 2022.

_____
Michael Shannon

In order to accommodate Mr. Shannon's vision disability, on July 29, 2022, I created a large-print version of this declaration for Mr. Shannon to review. The substance of that large-print version, which Mr. Shannon confirmed was true and correct, is identical to the substance of this normal-print version.

_____
Jacob J. Hutt